**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| LUCAS CRANOR, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:18-cv-00628-FJG |
| v. | ) ) ) | **CLASS ACTION** |
| THE ZACK GROUP, INC., LYNN CARE, LLC, | ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

**SECOND AMENDED CLASS ACTION COMPLAINT**

1.      Plaintiff, Lucas Cranor, individually and on behalf of all others similarly situated, brings this action against Defendants, The Zack Group, Inc., and Lynn Care, LLC (collectively, "Defendants") for negligently, willfully and/or knowingly sending text messages to Plaintiff's cellular telephone number using an automatic telephone dialing system ("ATDS"), without prior express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

**INTRODUCTION**

2.      "If robocalls were a disease, they would be an epidemic." *Rage Against Robocalls*, Consumer Reports (July 28, 2015, 6:00 AM), https://www.consumerreports.org/cro/magazine/ 2015/07/rage-against-robocalls/index.htm.      "Robocalls" are the #1 consumer complaint in America today.

3.      The Pew Research Center has reported 69 percent of cellular users who use text messaging receive unwanted text message spam, with 25 percent of them receiving it on a weekly basis.  Jan Lauren Boyles and Lee Rainie, *Mobile Phone Problems*, Pew Research Center (Aug. 2,

1

2012), http://www.pewinternet.org/2012/08/02/mobile-phone-problems. Plaintiff is one such person.

4. The TCPA was enacted to prevent companies like Defendants from invading American citizens' privacy and to prevent illegal robocalls and text messages.

5. The TCPA regulates, *inter alia*, the use of automated telephone equipment (a/k/a "autodialers" or "robodialers") to make calls or send text messages to any cellular telephone number. Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

6. Text messages are "calls" under the TCPA. *Layden v. Adams Auto Corp.*, No. 18-00065-CV-W-ODS, 2018 U.S. Dist. LEXIS 79792, at *4 (W.D. Mo. May 11, 2018) (quoting *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016)).

7. In 2012, pursuant to its rulemaking authority under the TCPA, the FCC imposed even stricter requirements on "advertising" and "telemarketing" text messages by making it unlawful to:

> Initiate, or cause to be initiated, any telephone call that includes or introduced an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any [cellular telephone number], other than a call made with the prior express written consent of the called party[.]

47 C.F.R. § 64.1200(a)(2). This prior written consent requirement became effective on October 16, 2013.

8. The term "prior express written consent" means:

> [A]n agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the

2

telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered. (i) The written agreement shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

47 C.F.R. § 64.1200(f)(8). In other words, the agreement "must tell consumers the telemarketing will be done with autodialer equipment and that consent is not a condition of purchase." In re Rules & Regulations Implementing the TCP Act of 1991 et al., 30 FCC Rcd 7961, 8012-8013 ¶ 98 (F.C.C. July 10, 2015).

## JURISDICTION AND VENUE

9.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331 and 28 U.S.C. § 1391, respectively.

10.     Defendants' unlawful conduct was directed to this District, Plaintiff's cellular telephone received the illegal text messages in this District, and Defendants provide and market their services in this District.

## A BRIEF OVERVIEW OF TEXT MESSAGING

11.     In recent years, companies who have often felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and email have increasingly looked to alternative technologies through which they can send bulk solicitations cheaply.

12.     One of the newest types of such bulk marketing is to advertise through text messaging.

3

13.     The open rate for text messages exceeds 99 percent, and 90 percent of those messages are read within three minutes.  Conversely, the open rate for email in the retail industry is 31 percent.

14.     Unlike more conventional advertisements, text calls, and particularly wireless or mobile spam, can cost their recipients money because cellphone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized or whether they prepay for these plans.

15.     The Federal Communication Commission ("FCC") has recognized that wireless customers are charged for incoming calls and text messages whether they pay in advance or after the minutes are used.   These types of damages are the same shared by the Plaintiff and the class members.

## FACTUAL ALLEGATIONS

16.     At the time he received the text messages at issue in this case, Plaintiff was a natural person and citizen of the State of Missouri who resided in Joplin, Missouri , and is a "person" as defined by 47 U.S.C. § 153(39).

17.     Plaintiff is the subscriber and regular user of the cellular telephone number at issue, (417) xxx-1968.

18.     Thus, Plaintiff is the "called party" within the meaning of the TCPA.

19.     Defendant The Zack Group, Inc. is a Kansas corporation with its principal office or headquarters in Overland Park, Kansas, and is a "person" as defined by 47 U.S.C. § 153(39).  The Zack Group, Inc. operates a medical staffing service that does business throughout Missouri and Kansas, including in this District.  The Zack Group, Inc. holds itself out as "helping you find the

4

ideal placement opportunity that matches your skillset and interests," and claims it "can place you where you want to be, when you want to be there."

20. Defendant Lynn Care, LLC is a Kansas limited liability company with its principal office or headquarters in Overland Park, Kansas, and is a "person" as defined by 47 U.S.C. § 153(39). Lynn Care, LLC operates a medical staffing service that does business throughout Missouri and Kansas, including in this District, under the name "The Zack Group, Inc.," "Zack Group Healthcare," and/or some similar name which includes the phrase "Zack Group."

21. Defendants never had prior express consent to send any text messages to Plaintiff's cellular telephone number.

22. On April 27, 2018, Defendants sent or caused to be sent from phone number (913) 906-8252 the following text message to Plaintiff's cellular telephone number:

> Hey Lucas, Interested in travel MS and Tele contracts for days/nights in Missouri? $1300-1600/wk after tax dep on location.

23. On June 13, 2018, Defendants sent or caused to be sent the following text message to Plaintiff's cellular telephone number:

> Hey Lucas, Interested in travel RN contracts for days/nights in MO? $1300-1700/wk aft tax dep on location. All skill sets.

24. The same day, Plaintiff texted back: "What company?"

25. Plaintiff did not receive any reply to his text message until the next day, June 14, 2018, at which time the sender identified itself as Zack Group Healthcare.

26. Defendants obtained Plaintiff's cellular telephone number from a third party.

27. On June 14, 2018, Plaintiff informed Defendants that their conduct is illegal and asked Defendants to remove his name from Defendants' list.

70732

28.     Each text message call Defendants made to Plaintiff's cellular telephone number was made without the prior express written consent of Plaintiff.

29.     Defendants made at least one text message call to (417) xxx-1968 using an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) ("ATDS").

30.     In particular, Defendants used the "TextUs" platform to send the text message(s) at issue.

31.     The TextUs platform allows the user to send automated text messages to large groups of stored cellular telephone numbers en masse, including pre-scheduled and automated outbound texts, and automated replies, which operate without human intervention.

32.     Each text message call Defendants made to (417) xxx-1968 in the last four years was made using an ATDS.

33.     Further, the anonymous nature of the text messages to Plaintiff's cellphone number, and the fact that Plaintiff responded the same day but Defendants did not reply until the following day, demonstrate that the text messages were sent using an ATDS.

34.     By effectuating these unlawful text messages, Defendants caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

35.     Defendants' aggravating and annoying text messages trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, intruded upon Plaintiff's seclusion, invaded his privacy and wasted his time.

36.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re Rules Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd 559 ¶ 7 (Jan. 4, 2008).  Defendants' text message calls

6

harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

37.     Defendants have a corporate policy of sending text messages using an ATDS in order to market and/or advertise Defendant's services to individuals such as Plaintiff for Defendants' financial benefit.

38.     Defendants intentionally use numbers obtained from third parties—knowing those numbers were not provided for use in connection with the sending of marketing, advertising or any other text messages—to send mass text messages to those numbers without first obtaining express consent or, upon information and belief, determining whether the numbers were assigned to a cellular telephone service.

39.     Defendants willfully or knowingly violated the TCPA with respect to the Plaintiff and members of the Class and each Subclass.

### COUNT I: Violation of the TCPA

40.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 39.

41.     Defendants sent at least one text message to Plaintiff's cellular telephone number using an ATDS without Plaintiff's prior express consent.

42.     The subject text messages were not sent for emergency purposes within the meaning of the TCPA.

43.     Defendants willfully and knowingly violated the TCPA, including 47 U.S.C. § 227(b)(1)(A)(iii), each time they sent a text message to Plaintiff's cellular telephone number using an ATDS without Plaintiff's prior express consent.

70732

44. The subject text messages to Plaintiff's cellular telephone number advertised the commercial availability or quality of Defendants' property, goods, or services, and therefore "included or introduced an advertisement" within the meaning of the TCPA.

45. The subject text messages to Plaintiff's cellular telephone number were for the purpose of encouraging the purchase or rental of, or investment in, Defendants' property, goods, or services, and therefore constitute "telemarketing" within the meaning of the TCPA.

46. Defendants did not have Plaintiff's "prior express written consent," as defined by 47 C.F.R. § 64.1200(f)(8), to send the subject text messages to Plaintiff's cellular telephone number.

47. Defendants willfully and knowingly violated the TCPA implementing regulations, including 47 C.F.R. § 64.1200(a)(2), each time it sent a text message to Plaintiff's cellular telephone number, that included or introduced an advertisement or constituted telemarketing, using an ATDS without Plaintiff's prior express written consent.

48. As a result of Defendants' illegal conduct, Plaintiff and the members of each Class and Subclass suffered actual damages and, under 47 U.S.C. § 227(b)(3)(B), are entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

49. Plaintiff and the Class and Subclass members are also entitled to and do seek injunctive relief prohibiting Defendants from violating the TCPA in the future.

## CLASS ACTION ALLEGATIONS

50. Plaintiff realleges and incorporates by reference the allegations contained in all other paragraphs as if fully stated herein. Plaintiff brings the above claims individually and on behalf of all others similarly situated.

51. In this case, Plaintiff seeks to certify Classes, subject to amendment, as follows:

8

52.     The Classes consist of:

The Third Party Class:

(1) All persons in the United States (2) to whose cellular telephone number (3) Defendants placed a non-emergency text message (4) about job placement (5) using substantially the same system(s) used to text Plaintiff (6) within 4 years of the complaint (7) where Defendants obtained the number from a third party.

The Telemarketing/Advertising Class:

(1) All persons in the United States (2) to whose cellular telephone number (3) Defendants placed a non-emergency text message (4) about Defendants' job placement services (5) using substantially the same system(s) used to text Plaintiff (6) within 4 years of the complaint (7) where there is no signed written agreement to send texts.

53.     Plaintiff represents and is a member of each Class. Excluded from each Class are Defendants and any entities in which Defendants have a controlling interest, Defendants' employees and agents, the Judge to whom this action is assigned, and any member of the Judge's staff and immediate family.

54.     Plaintiff is presently unaware of the exact number of members in each Class, but based upon the size and scope of Defendants' business, the automated nature of the texts, the number of nurses registered with the Missouri State Board of Nursing, and The Zack Group, Inc.'s responses to Plaintiff's written discovery, Plaintiff reasonably believes that the Classes number, at a minimum, in the thousands.

55.     Plaintiff and all members of each Class have been harmed by Defendants' actions.

56.     This Class Action Complaint seeks money damages and injunctive relief.

57.     The joinder of all Class members is impractical due to the size and relatively modest value of each individual claim.

58. The disposition of the claims in a class action will provide substantial benefit to both the parties and the Court in avoiding multiplicity of identical suits.

59. The members of each Class can be easily identified through records maintained by Defendants, its agents or third parties.

60. There are question of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual Class members. Those common questions of law and fact include, but are not limited to:

    a) Whether the system used to send the text messages was an ATDS;

    b) Whether Defendants engaged in a pattern of using an ATDS to send text messages to cellular telephone numbers without the prior express consent of the called party;

    c) Whether the text messages included or introduced an advertisement;

    d) Whether the text messages constitute telemarketing;

    e) Whether Defendants' conduct was willful or knowing; and

    f) Whether Defendants' actions violated the TCPA.

61. As a person who received a text message on his cellphone that was sent using an ATDS without prior express consent, all within the meaning of the TCPA, Plaintiff asserts claims that are typical of the members of each Class.

62. Plaintiff will fairly and adequately represent and protect the interests of each Class, and Plaintiff does not have an interest that is antagonistic to any member of the Class.

63. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA.

10

64. A class action is the superior method for the fair and efficient adjudication of this controversy.

65. Class-wide relief is essential to compel Defendants to comply with the TCPA. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the TCPA are small.

66. Management of these claims as a class action is likely to present significantly fewer difficulties than are presented by many class claims because the text messages at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute and regulations to authorize such text messages to their cellular telephones.

67. Defendants have acted on grounds generally applicable to each Class, thereby making final injunctive relief and corresponding declaratory relief with respect to each Class as a whole appropriate.

68. Moreover, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of her and each Class, and against Defendants, for:

(a) A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227;

(b) An injunction prohibiting Defendants from using an ATDS to sent text messages to any cellular telephone number without prior express consent authorizing Defendants to send text messages to those numbers, in order to ensure that Plaintiff is not texted in the future;

(c)     An injunction requiring Defendants to file with the Court quarterly reports of third party audits of Defendants' system and procedures to not send text messages to any cellular telephone number using an ATDS without prior express consent authorizing Defendants to send text messages to those numbers, in order to ensure that Plaintiff is not texted in the future;

(d)     An injunction prohibiting Defendants from using an ATDS to send telemarketing or advertising text messages to any cellular telephone number without signed, written agreements authorizing Defendants to send such text messages to those numbers, in order to ensure that Plaintiff is not texted in the future;

(e)     An injunction requiring Defendants to file with the Court quarterly reports of third party audits of Defendants' system and procedures to not send telemarketing or advertising text messages to any cellular telephone number using an ATDS without signed, written agreements authorizing Defendants to send such text messages to those numbers, in order to ensure that Plaintiff is not texted in the future;

(f)     An award of actual damages in an amount to be proven at trial;

(g)     An award of statutory damages for Plaintiff and each Class and Subclass member in the amount of $500.00 for each and every call and text message that violated the TCPA;

(h)     An award of treble damages, as provided by statute, of up to $1,500.00 for Plaintiff and each Class and Subclass member for each and every call and text message that violated the TCPA;

(i)     An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing the Class(es) and Subclass(es) the Court deems appropriate, finding that Plaintiff is a proper representative of each Class and Subclass, and appointing the lawyers and law firms representing Plaintiff as counsel for each Class and Subclass;

(j)     An award of Plaintiff's attorneys' fees, litigation expenses and costs of suit; and

(k)     Such further and other relief as the Court deems reasonable and just.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby demands trial by jury on all issues so triable.

Dated: March 8, 2019                                Respectfully Submitted,

                                                    LUCAS CRANOR, INDIVIDUALLY AND ON BEHALF
                                                    OF ALL OTHERS SIMILARLY SITUATED, Plaintiffs

                                                    By:     /s/ Keith J. Keogh
                                                    Keith J. Keogh (*pro hac vice*)
                                                    Theodore H. Kuyper (*pro hac vice*)
                                                    Keogh Law, Ltd.
                                                    55 W. Monroe St., Suite 3390
                                                    Chicago, IL 60603
                                                    (312) 726-1092
                                                    (312) 726-1093 (fax)
                                                    keith@keoghlaw.com
                                                    tkuyper@keoghlaw.com

                                                    A.J. Stecklein (#16330)
                                                    Michael H. Rapp (#25702)
                                                    Stecklein & Rapp, Chartered
                                                    748 Ann Ave.
                                                    Kansas City, Kansas 66101
                                                    (913) 371-0727
                                                    (913) 371-0147 (fax)
                                                    aj@kcconsumerlawyer.com
                                                    mr@kcconsumerlawyer.com

                                                    *Attorneys for Plaintiff and the Putative Class*

13

70732

## CERTIFICATE OF SERVICE

I hereby certify that, on March 8, 2019, I caused a copy of the foregoing ***Second Amended Class Action Complaint*** to be served upon the following via electronic filing using the CM/ECF system:

Mark A. Olthoff (#38572)
Brisa I. Wolfe (#67028)
POLSINELLI, P.C.
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112-1895
(816) 753-1000
(816) 753-1536 (fax)
molthoff@polsinelli.com
bwolfe@polsinelli.com


    /s/ Theodore H. Kuyper    

70732