# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | | |
|---|---|---|
| LUCAS CRANOR, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 4:18-cv-00628-FJG |
| v. | ) ) | |
| THE ZACK GROUP, INC., LYNN CARE, LLC, | ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff Lucas Cranor moves for preliminary approval of the class action settlement reached between himself and Defendants The Zack Group, Inc. and Lynn Care, LLC (collectively, "Defendants") (the "Parties").

This case alleges that Defendants violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), by sending automated text messages to cellular telephones without the prior express consent of Plaintiff and the putative class members.. On January 30, 2019 the Parties conducted a mediation of this case with Mr. John Phillips of Husch Blackwell. While the mediation resulted in impasse, the Parties continued to conduct discovery and hold settlement discussion thereafter, and reached a settlement resolving the claims of Plaintiff and the Settlement Class on June 1, 2019. A copy of the Settlement Agreement and Release ("Agreement") is attached hereto as **Appendix 1**.

Under the Settlement, Defendants are required to pay $1,500,000 into a settlement fund ("Fund") for a class consisting of approximately 9,720 persons to whom Defendants are alleged to have sent text-messages regarding employment opportunities without proper consent. There is

no need to submit a claim to partake in the settlement. Instead, Class Members who do not exclude themselves from the settlement will receive a pro rata cash payment from this Fund. Not a single penny of the Fund will revert to Defendants.

The settlement fund includes administration costs, fees, and any incentive award as approved by the Court. Plaintiff will petition the Court for an incentive award of $10,000 and attorneys' fees equal to 500,000, representing one-third of the total Settlement Amount as well as reasonable costs. The class notice will explicitly advise the class of these anticipated petitions.

Along that line, the settlement requires notice to be sent to the class members advising them of the right to opt-out or object, as provided by Federal Rule 23, thus giving class members the choice of pursuing their own individual claim or staying in the class and receiving a share of the class recovery.

Plaintiff submits this Memorandum in support of his Motion for Preliminary Approval of Settlement, certification of the class for purposes of settlement, and approval of the form, manner, and administration of notice. A final motion and proposed order supporting the fairness of the proposed settlement will be submitted after members of the Settlement Class have received notice and have had an opportunity to object/comment or opt-out, and prior to the Court's Final Approval Hearing. For the reasons set forth in detail below, the proposed settlement is reasonable, fair, and adequate, and it should be approved by the Court.

## I.     NATURE OF THE LITIGATION

### A.     Litigation, Mediation, and Settlement

On August 14, 2018, Plaintiff filed the Action on behalf of himself and on behalf of the putative class alleging that Zack Group and Lynn Care violated the TCPA by sending text messages to his cell phone without prior express consent.

70350607.2

On January 30, 2019, the Parties unsuccessfully participated in private mediation with mediator John Phillips. The Parties were not able to resolve the entire Action at the first mediation.

After the unsuccessful mediation, Plaintiff engaged in extensive third party discovery, including issuing subpoenas to Defendants' messaging vendor TextUs and the lead sources from which Defendants obtained the cellular telephone numbers to which they sent messages: CareerBuilder, LLC, The Gypsy Nurse, Indeed, Inc., and NurseRecruiter.com, LLC. This discovery was aimed at identifying the class as well as examining Defendants' contention they had consent to text the class members.

Plaintiff also engaged the services of expert witness Jeffrey Hansen to analyze the data produced by Defendants and obtained from the third parties. Mr. Hansen's report was disclosed pursuant to Fed. R. Civ. P. 26(a)(2) on June 7, 2019.

Subsequently, the parties continued to discuss resolution with the further assistance of mediator Phillips. On June 14, 2019, the Parties reached an agreement in principle to settle the Action as set forth in this Agreement and then spent the next several months negotiating the terms.

## II. SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement are as follows:

A. **Class Definition**. The Settlement Class is defined as follows:

Those individuals who (1) All persons in the United States (2) to whose cellular telephone number (3) Defendants placed a non-emergency text message (4) about Defendants' employment opportunities (5) using substantially the same system(s) used to text Plaintiff (6) within 4 years of August 14, 2018 (7) where Defendants obtained the number from a third party and (8) those numbers were not obtained from employees, CareerBuilder or Nurse Recruiter.

The following are excluded from the Settlement Class: (1) the trial judge presiding over this case; (2) Defendants, as well as any parent, subsidiary, or

3

affiliate of Defendants, and the officers, directors, agents, servants, or employees of Defendants; (3) any Settlement Class Member who has timely opted out of this proceeding; and (4) Plaintiff's Counsel, their employees, and their immediate family.

It has been determined that the Settlement Class includes the subscribers to the 9,720 unique cellular telephone numbers identified in Plaintiff's expert report.

**B.** **Structure of the Settlement Amount**. The Agreement provides a $1,500,000.00 non-reversionary Settlement Fund to satisfy the Class's claim for damages, to be divided among those of the approximately 9,720 class members who do not opt-out.

**C.** **Individual Class Member Benefits**. As noted above, there is no claim form required to receive the settlement benefit of the settlement. Plaintiff expects each class member who remains in the class to receive around $95.

Class Counsel acknowledge that the $1,500,000 Fund does not constitute the full measure of statutory damages potentially available to the Settlement Class. This fact alone, however, should not weigh against preliminary approval. "Because settlement of a class action, like settlement of any litigation, is basically a bargained exchange between the litigants, the judiciary's role is properly limited to the minimum necessary to protect the interests of the class and the public. Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980). The Settlement was reached after extensive factual investigation and discovery of the claims and issues and after taking into consideration the risks involved in the actions, after extensive arm's-length negotiations presided by experienced mediators and former district judges. Further, the Settlement compares favorably to

70350607.2

other TCPA class actions settlement. Courts have approved other TCPA class action settlements involving similar putative classes that achieved much smaller pro rata monetary recoveries.[1]

Indeed, courts have found similar TCPA class action settlements to meet the standards for preliminary approval and, as well as final approval. *Connor v. JPMorgan Chase Bank, N.A.*, No. 10 CV 01284 GPC BGS (S.D. Cal. Feb. 5, 2015) (entering final approval of settlement providing slightly less than 2.5 million accounts for $11,268,058); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) (N.D. Ill. Feb. 12, 2015) (granting final approval where each class member who submitted a claim would be awarded $39.66) (Holderman, J.); and *Steinfeld v. Discover Fin. Svcs.* 12-cv-01118 (N.D. Cal.) (Final Approval of $46.98 to each claimant).

It is worth noting that many consumer class actions, including TCPA class actions, provide for a claim form where 5% to 10% of the class submit a claim and very few provide for recovery for every single class member. Yet the $95 that every class member is expected to receive is a terrific result when compared to similar TCPA class settlements that provide significantly less than $95 even when only 5% to 10% submit a claim as illustrated by the above settlements.[2]

---

[1] *See*, *e.g.*, *Kramer v. Autobytel*, No. 10-cv-02722, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. Jan. 27, 2012) (approving $12.2 million settlement to benefit 47 million class members); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-cv-1290, 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. Feb. 5, 2013) (preliminarily approving $17.1 million settlement to 5,887,508 class members; final approval granted at Dkt. No. 91); *Adams v. AllianceOne Receivables Mgmt. Inc.*, No. 08-cv-00248, Dkt. Nos. 116 & 137 (S.D. Cal. Sept. 28, 2012) (approving $9 million settlement to benefit 6,696,743 class members); *Palmer v. Sprint Nextel Corp.*, No. 09-cv-01211, Dkt. Nos. 84 & 91 (W.D. Wash. Oct. 21, 2011) (approving $5.5 million settlement to benefit 18.1 million class members).

[2] A true apples to apples comparison would estimate the value of this case at a 5% to 10% claim rate. Here, if 5% to 10% of the class submitted a claim, they would receive $1,900 and $956 respectively, which is significantly more than the vast majority of TCPA class settlements.

70350607.2

For all of the above reasons, the monetary amount recovered through the Settlement—exceeds many TCPA settlements found to be fair, adequate, and reasonable—is a great result for the Class.

D.    **Compensation for the Class Representative**. The typical class action settlement includes an extra payment to the class representative for their service to the class, called an "incentive" or "service award." *See*, *e.g.*, *Caligiuri v. Symantec Corp.*, 855 F.3d 860, 863 (8th Cir. 2017); *Tussy v. ABB, Inc.*, 850 F.3d 951, 962 (8th Cir. 2017) ("[i]ncentive awards compensate lead plaintiffs for their work and the benefit they have conveyed on the rest of the class"); *Tennille v. Western Union Co.*, 785 F.3d 422, 428 (10th Cir. 2015). In this case, Plaintiff will request in their motion for Final Approval an incentive award of $10,000.00. The class notice will advise each class member of this request. There is no clear sailing provision in the Settlement Agreement and the Settlement is not contingent upon the amount of an incentive award.

E.    **Payment of Attorneys' Fees and Costs**. Plaintiff will petition the Court within 30 days of preliminary approval, for reasonable attorney's fees equal to $500,000.00, representing one-third of the Settlement Amount plus reasonable costs. This award shall be Class Counsel's total recovery for attorneys' fees, costs, and adequately supported expenses of any kind (including, but not limited to, mediation fees, travel, and filing fees). The class notice will advise each class member of this request and like the incentive award here is no clear sailing provision relating to fees nor is the Settlement contingent upon the amount of attorney fees.

F.    **Release**. In exchange for the relief described above, Plaintiff Cranor has provided a full, general release while the Class will provide a narrower release. The Class Release provides:

70350607.2

Subject to final approval by the Court of the Settlement, and for good and valuable consideration set forth herein, the receipt and sufficiency of which is hereby acknowledged, all Releasing Settlement Class Members irrevocably release, acquit, and forever discharge Zack Group, Lynn Care, and the other Released Parties, of and from any and all claims, rights, causes of action, penalties, demands, damages, debts, accounts, duties, costs and expenses (other than those costs and expenses required to be paid pursuant to this Agreement), liens, charges, complaints, causes of action, obligations, or liability of any and every kind that were asserted in the Action, or that could have been asserted arising out of all of the alleged acts, omissions, facts, matters, transactions, circumstances, and occurrences that were directly or indirectly alleged, asserted, described, set forth, or referred to in the Action, whether such allegations were or could have been based on common law or equity, or on any statute, rule, regulation, order, or law, whether federal, state, or local relating to the TCPA and other laws involving the use of automatic telephone dialing system and/or the use of artificial or prerecorded voice (the "Released Claims").

*See* Agreement, attached as **Appendix 1** at p. 12.

**G.** *Cy Pres*. Settlement Awards shall be paid by check or electronic deposit at the election of the class member. If no method is elected, the Claims Administrator shall make an electronic payment (PayPal or Amazon) to the e-mail that was sent the notice. If electronic payment was not successful, a check will be mailed to the Settlement Class Member if an address was obtained and not returned as undeliverable. Within forty-five (45) days after the Settlement Effective Date, the Claims Administrator shall send the Settlement Award to each eligible Settlement Class Member. The Claims Administrator shall undertake reasonable means to locate current addresses for all returned checks. Checks will be valid for one-hundred twenty (120) days from the date on the check. The amounts of any checks that remain uncashed more than one-hundred twenty (120) days after the date on the check will be included as part of the Subsequent Distribution. No portion of the Settlement Fund will return to the Defendants. Only after a second distribution or if a second distribution is not feasible or after each class member received the maximum $500, any residual funds will be provided as cy pres to St. Jude's Hospital or Shiner's Hospitals. The class notice advises the class of the intended cy pres.

## III. THE SETTLEMENT CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION UNDER FEDERAL RULE 23

To settle a case on a class basis, the class must meet the requirements for class certification. *See Manual for Complex Litigation (Fourth)* § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *St. Louis Heart Center, Inc. v. Vein Centers for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at \*2 (E.D. Mo. Dec. 11, 2013) (certifying TCPA class action). Class certification is appropriate if the proposed class meets the elements of Federal Rule of Civil Procedure 23, including the requirement that the plaintiff and his counsel be adequate class representatives.[3]

### 1. The members of the Class are sufficiently numerous.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). It is undisputed that the proposed Settlement Class here consists of approximately 9,720 people. Thus, the Settlement Class satisfies the numerosity requirement." *In re Charter Commc'ns, Inc. Sec. Litig.*, No. 02-1186, 2005 WL 4045741, at \*11 (E.D. Mo. June 30, 2005); *see McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) (a class of forty or more is generally sufficient to establish numerosity).

### 2. Questions of law and fact are common to the Class.

"Rule 23(a)(2)'s 'commonality' requirement is satisfied if a claim arises out of the same legal or remedial theory." *In re Charter*, 2005 WL 4045741, at \*11. "The plaintiff must show that 'a classwide proceeding will generate common answers apt to drive the resolution of the litigation.'" *St. Louis Heart Center*, 2013 WL 6498245, at \*6 (citing *Bennett v. Nucor Corp.*, 656

---

[3] It must be noted that the superiority analysis is relaxed in the settlement context because in that context trial management considerations are not a factor. *See Amchem*, 521 U.S. at 620 (in settlement context, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (citations omitted).

Case 4:18-cv-00628-FJG    Document 68    Filed 09/13/19    Page 8 of 18

F.3d 802, 814 (8th Cir. 2011)). Importantly, Rule 23(a)(2) is construed permissively: "the interests of the various plaintiffs do not have to be identical to the interests of every class member; it is enough that they share common objectives and legal or factual positions." *In re Charter*, 2005 WL 4045741, at \*11.

Here, Class Members' claims stem from the same factual circumstances, in that the Settlement Class Members' received automated text messages on their cellular telephones without proper consent. The theories of liability as to all Settlement Class Members arise from the same practices and present basic questions of law and fact common to all members of the Settlement Class. *See* Fed. R. Civ. P. 23(a). Accordingly, the commonality requirement is satisfied.

### 3. Typicality.

In order for Rule 23's typicality requirement to be met, a named plaintiff "may proceed to represent the class only if the plaintiff establishes that his claims or defenses are 'typical of the claims or defenses of the class.'" *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2001) (citing FED. R. CIV. P. 23(a)(3)). Typicality is satisfied as long as the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Id.* at 466–67; *see also Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 568 (S.D. Iowa 2011) ("The burden is fairly easily met so long as other class members have claims similar to the named plaintiff.").

Plaintiffs' claims arise from Defendants' alleged practices of sending text messages to cellular telephone numbers without proper consent. As discussed in the previous section, Plaintiff's claims are the same as those advanced on behalf of the Settlement Class Members, and Plaintiff is a member of the Settlement Class. Plaintiff's claims thus rest on the same legal

70350607.2

and factual issues as those of the class members. That is the hallmark of typicality. *See Deiter*, 436 F.3d at 466 (citing Fed. R. Civ. P. 23(a)(3)).

### 4. Mr. Cranor and his counsel are adequate.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To meet this criterion, the representative Lead Plaintiff's interests must be consistent with, and not antagonistic to, those of the Class. Moreover, Lead Counsel must be qualified, competent and diligent." *In re Charter*, 2005 WL 4045741, at *12. As set forth above, Mr. Cranor's claims are aligned with the claims of the Class. Mr. Cranor therefore have every incentive to vigorously pursue the Class Members' claims, as he has done to date.

In addition, Mr. Cranor retained the services of experienced class counsel who have ample experience representing plaintiffs in class actions, including TCPA class actions. *See* Declarations of Keith J. Keogh and A.J. Stecklein attached hereto as **Appendices 2 and 3**.

### 5. Common questions predominate over any individual issues.

In addition to meeting the four requirements of Rule 23(a) and the requirements of Rule 23(g), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Here, the Class satisfies Rule 23(b)(3).

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). The predominance requirement is satisfied here because the essential factual and legal issues

regarding the Settlement Class Members' claims are common, and relate to alleged standardized procedures.

### 6. Class treatment is superior.

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Because the claims in this case all arise from the same conduct on the part of Defendants, a class action is the superior vehicle for determining the rights of absent class members. *St. Louis Heart Center*, 2013 WL 6498245, at *11 ("Because the statutory damages available to each individual class member are small—at most $1500 per violation—it is unlikely that the class members have interest in individually controlling the prosecution of separate actions.").

## IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

The procedure for review of a proposed class action settlement is a well-established two-step process. Newberg & Conte, 4 *Newberg on Class Actions*, § 11.25, at 38–39 (4th Ed. 2002); *see also* David F. Herr, *Annotated Manual for Complex Litigation*, § 21.632 (4th ed. 2004); and *Nieberding v. Barrette Outdoor Living, Inc.*, 2015 U.S. Dist. LEXIS 61825 at *5 (D. Kan. May 12, 2015) (Crabtree, J.).

The first step is a preliminary, pre-notification evaluation to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, § 11.25, at 38–39 (*quoting Manual for Complex Litigation*, § 30.41 (3rd Ed.)); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1110 (9th Cir. 2008); *Fresco v. Auto Data Direct, Inc.*, No 03-61063-CIV, 2007 WL

11

2330895 at *4 (S.D. Fla. May 14, 2007). This is not a final fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing. *Newberg*, § 11.25, at 38–39; *Fresco*, 2007 WL 2330895 at *4 ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement.") (Internal quotations omitted).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and an informal presentation. *See Manual for Complex Litigation*, § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, § 11.25, at 38–39.

There is a strong judicial and public policy favoring the voluntary conciliation and settlement of class action litigation. *See Grady v. De Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969) ("It is well-settled, as a matter of sound policy, that the law should favor the settlement of controversies."); *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits.") With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although the Court has discretion in deciding whether a settlement should be approved, one of the main factors for evaluating the settlement is the judgment of the Parties that the settlement should be approved. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). Ultimately, the Court should approve a class action settlement if it is fair,

70350607.2

adequate, and reasonable. *See id.*; *see also In re Motor Fuel*, 2015 U.S. Dist. LEXIS 110827 at *175 (D. Kan. Aug. 21, 2015), citing Fed. R. Civ. P. 23(e)(2). When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

In determining whether the proposed settlement is fair, adequate, and reasonable, the following factors are considered: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Rutter*, 314 F.3d at 1188.

Here, the proposed Settlement easily meets each factor. The Settlement was fairly and honestly executed because it is the result of ongoing discovery and negotiations by experienced class counsel, with the initial phase of settlement discussions being prompted from a formal mediation conducted by John R. Phillips. The ultimate outcome was in doubt because of the defenses raised by Defendants. The value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation because the Settlement offers each class member relief without the need to even submit a claim form. Finally, as noted above, and based on the foregoing, it is class counsel's judgment that the settlement is fair and reasonable.[4]

---

[4] *See* **Appendix 2** (Decl. of Keith J. Keogh) at ¶ 12-18; **Appendix 3** (Decl. of A.J. Stecklein) at ¶ 6.

70350607.2

Thus, there should be no doubt that the proposed settlement is in the best interest of class members.[5] Class counsel expects no significant opposition by any class member. In short, the Parties submit that the Settlement should be preliminarily approved.

## V.      THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

The Agreement includes notice procedures designed to directly reach each member of the class as is practicable. **Appendix 1** at § VII(2)(A). First, after entry of the Preliminary Settlement Approval Order, the Claims Administrator shall perform reverse look up to identify the addresses for the settlement class Members as Defendants only have telephone numbers and e-mails for the class members.

The Claims Administrator will provide direct notice via the e-mails in the class list to every Settlement Class Member. For those Settlement Class Members for whom an address was obtained they shall be sent additional notice via First Class Mail. This notice will be in addition to the e-mail notice. Prior to mailing the postcard notice, the Claims Administrator shall search for updated addresses via the USPA national change of address database. The Claims Administrator shall re-mail one time any Notice returned as undeliverable and shall undertake reasonable means to locate alternative addresses for the returned postcards.

Both the e-mail and First class notice shall contain a claim ID and shall direct recipients to the Settlement Website to update their addresses or specify a method of payment.

The Claims Administrator shall also send a reminder notice via E-Mail to all class members for whom it has an e-mail address, no later than thirty (30) days before the claim filing deadline.

---

[5] *See* **Appendix 2** (Decl. of Keith J. Keogh) at ¶ 18; **Appendix 3** (Decl. of A.J. Stecklein) at ¶ 6.

70350607.2

The notice will advise class members about the Settlement, and specifically advises them of the estimate they will receive, as well as the incentive fee sought by Mr. Cranor and how attorney fees are paid. The notice directs them to the Settlement Website www.LynncareTCPASettlement.com, where they can obtain additional information about the Settlement, including the incentive and fee petition that will be filed and the final approval motion. For each class member for whom an address was obtained, an additional notice shall be sent via First Class Mail with the same information as the Email notice.

The notice also provides a toll-free phone number for Settlement Class Members to contact class counsel to ask questions. **Appendix 1** at *Exhibit 2*.

A mailed notice combined with a Website for further information is a commonly-approved method for giving notice in class settlements. *See*, *e.g.*, *Hershey v. Exxonmobil Oil Corp.*, 2012 U.S. Dist. LEXIS 50469 at *1–*2 (D. Kan. Apr. 11, 2012); *Berkson v. Gogo, LLC*, 2015 U.S. Dist. LEXIS 163405 at *31 (E.D.N.Y. Dec. 4, 2015); *Perez v. Asurion Corp.*, 501 F. Supp.2d 1360, 1375 (S.D. Fla. 2007); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012) ("All forms of notice directed class members to a website and toll-free number that contained information about the settlement.").

Moreover, Plaintiffs propose to give class members 60 days to evaluate the notice, ask questions and decide how respond to it, which is more than sufficient. *See DeJulius v. New Eng. Health Care Emples. Pension Fund*, 429 F.3d 935, 946 (10th Cir. 2005) (notice sufficient even though most class members given less than 32 days to respond).

Third, Defendants will serve upon the Attorneys General and the Attorney General of the United States notice of the proposed settlement, pursuant to 28 U.S.C. § 1715, within ten days of the filing of the preliminary approval motion. **Appendix 1** at § VII.

70350607.2

## VI. THE MATTER SHOULD BE SET FOR A FAIRNESS HEARING

After adequate notice has been given to the Settlement Class and the government, as required by 28 U.S.C. § 1715, a fairness hearing should be held so that the Court may confirm that the Settlement is fair, reasonable, and adequate. *See Nieberding v. Barrette Outdoor Living, Inc.*, 2015 U.S. Dist. LEXIS 61825 at *5–*6 (D. Kan. May 12, 2015) (Crabtree, J.).

## VII. DEFENDANTS DO NOT OBJECT TO THE RELIEF REQUESTED

Defendants support the relief requested by Plaintiff in this motion, as Defendants agreed to the terms of the Settlement and do not oppose its approval.

## VIII. SUGGESTED SCHEDULE

Time is needed to prepare and issue notice to the class members, because they need sufficient time to consider the notice and to decide whether to participate in the class, opt-out, or consult with class counsel to ask any questions that they may have about the Settlement. Accordingly, class counsel suggests the following general scheduling outline for evaluating and concluding this Settlement:

70350607.2

| | |
|---|---|
| _____, **2019** <br> [30 days after the date of the Preliminary Approval Order] | Deadline for notice of the Settlement to be sent to the Settlement Class Members |
| _____, **2019** <br> [30 days after the date of the Preliminary Approval Order] | Deadline to Petition for Incentive Award and Attorney Fees and costs |
| _____, **2019** <br> [90 days after Preliminary Approval Order] | Deadline for Settlement Class Members to request exclusion or file objections (Opt-Out and Objection Deadline) and file any statement of intention to appear at the fairness hearing. |
| _____, **2019** <br> [120 days after Preliminary Approval Order] | Deadline for Parties to file the following: <br> (1) List of persons who made timely and proper requests for exclusion (under seal); and <br> (2) Proof of Class Notice. |
| _____, **2019** <br> [14 days before the Final Approval Hearing] | Motion and memorandum in support of final approval, including responses to any objections. |
| _____, **2020** at \_\_\_\_\_ \_\_.m. | Final Approval Hearing |

## IX.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully request the Court preliminarily approve the proposed settlement and notice plan, and set the matter for a fairness hearing by entering the proposed order attached as **Appendix 1**, *Exhibit 3*, and grant such other and further relief as deemed just.

70350607.2

Respectfully Submitted,

/s/ Keith J. Keogh
Keith J. Keogh (*pro hac vice*)
Theodore Kuyper (*pro hac vice*)
55 W. Monroe Street
Suite 3390
Chicago, IL 60603
Tel:  312-726-1092
keith@keoghlaw.com
tkuyper@keoghlaw.com

A.J. Stecklein            #16330
Michael H. Rapp          # 25702
Stecklein & Rapp Chartered
748 Ann Ave
Kansas City, KS 66101
Telephone: (913) 371-0727
Facsimile: (913) 371-0147
aj@kcconsumerlawyer.com
mr@kcconsumerlayer.com


*Class Counsel*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 13, 2019, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and thereby served it on all parties.


/s/ Keith J. Keogh
Keith J. Keogh